UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

DIRK KLINKE,

    Plaintiff,

vs.

ROBERT BANNISTER, et. al.

    Defendants.

3:12-cv-00032-RCJ-WGC

**REPORT & RECOMMENDATION**
**OF U.S. MAGISTRATE JUDGE**

This Report and Recommendation is made to the Honorable Robert C. Jones, Chief United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4. Before the court is Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction. (Docs. # 52, # 53.)[1] Defendants have opposed. (Doc. # 56.) Plaintiff filed a reply. (Doc. # 60.) In addition, Plaintiff filed an emergency motion for an order directing Defendants to submit Plaintiff's relevant medical records under seal. (Doc. # 55.) The court granted this motion and Defendants filed the relevant records under seal. (Doc. # 59.) The court conducted a hearing on Plaintiff's motion on October 22, 2013. (*See* Minutes at Doc. # 61.)

After a thorough review, the court recommends that Plaintiff's motion be denied.

---

[1] Refers to court's docket number. These documents are identical but were docketed separately by the Clerk.

1

# I. BACKGROUND

**A. Summary of Claims**

At all relevant times, Plaintiff Dirk Klinke was an inmate in custody of the Nevada Department of Corrections (NDOC). (Pl.'s Am. Compl. (Doc. # 7).) The events giving rise to this litigation took place while Plaintiff was housed at Lovelock Correctional Center (LCC) and Northern Nevada Correctional Center (NNCC). (*Id.*) Plaintiff, a pro se litigant, brings this action pursuant to 42 U.S.C.§ 1983. (*Id.*) Defendants are Craspy, Donnely, Baze, Palmer, LeGrand, Peery, Snider, Remsen, Bannister, Mar, and Johns. (*See* Doc. # 9.)

Plaintiff alleges that when he was housed at LCC, defendants Donnely, Craspy and Baze allowed inmates to supervise Plaintiff and other inmates for a drill and knowingly placed untrained and unsupervised inmates in charge in violation of institutional safety regulations. He asserts that the officers acted pursuant to LCC administrators Palmer and LeGrand's policy of allowing subordinates to violate NDOC administrative regulations by allowing inmates to supervise or manage other inmates. As a result, Plaintiff contends he was made to execute drill maneuvers outside with no rest or water breaks in 100-degree heat until he passed out while in formation, falling on his chin and breaking his jaw severely in two places and chipping numerous teeth. He underwent emergency surgery on his broken jaw. Plaintiff was transferred to Renown Hospital in Reno, where his jaw was set and wired shut for five weeks and then he was transferred to NNCC.

The day after the wires were removed from his jaw, Plaintiff avers that defendant NNCC dentist Remsen knowingly and maliciously "pried on" Plaintiff's jaw until it broke again. While Remsen took x-rays to confirm the jaw was broken, Plaintiff contends he provided no pain medication nor took any other steps to treat Plaintiff. Plaintiff claims he suffered extreme pain

while eating and his jaw made popping and crunching noises that caused him extreme headaches. Plaintiff goes on to allege that through numerous kites and grievances, defendant nurses Peery and Snider and defendant Medical Director Bannister had full knowledge Remsen purposefully re-broke Plaintiff's jaw and that he suffered serious pain as a result, yet they took no steps to secure treatment for Plaintiff for five months.

Plaintiff ultimately needed a second jaw surgery. He contends that because of the extreme delay in the second surgery, he now needs a third surgery. Plaintiff contends that defendants Bannister, Mar and Johns, as part of the NNCC Utilization Review Panel, refuse to allow the third surgery. He alleges that to shift the cost of the surgery, Bannister, Mar and Johns will not approve the third surgery unless Plaintiff lies and states that he broke his teeth and jaw in a fight.

On screening, the court concluded that Plaintiff states a colorable Eighth Amendment claim for deliberate indifference to a serious threat to his safety against defendants Craspy, Donnely, and Baze. (Doc. # 9 at 5.) The court also determined that Plaintiff states a colorable Eighth Amendment claim for deliberate indifference to a serious medical need against defendants Remsen, Peery, Snider, Bannister, Mar and Johns. (*Id*. at 6.) Finally, Plaintiff was found to have stated colorable Eighth Amendment claims for supervisory liability against defendants Palmer and Le Grand.

**B. Plaintiff's Motion**

In the instant motion, Plaintiff asserts that he has been told he must undergo a third surgery and treatment but has been informed that he will be transferred to another institution even though his treatment has not been completed. (Docs. # 52, # 53.) He argues that he is likely to succeed on the merits because if he is transferred out of NNCC he will not receive adequate medical care. (Id. at 5.) He also claims he was told that he should remain at NNCC. Next, he

claims that a transfer will result in irreparable harm because they will not be able to provide him with appropriate treatment. In fact, he claims that the only facility capable of providing him with the appropriate treatment is NNCC. (Docs. # 52, # 53 at 3.) Without this treatment, he contends he will not be able to open, close or move his jaw correctly. (*Id*. at 4.) He also states that if he is transferred to another institution he will not be provided with the special diet he needs to accommodate his misaligned bite. (*Id*.) He contends that the balance of hardships weighs in his favor because leaving him at NNCC will not result in any harm to Defendants. (*Id*.) Finally, he contends it is always in the public interest for prison officials to obey the law. (*Id*. at 6.)

**C. Defendants' Opposition**

Defendants oppose the request for injunctive relief, arguing that there is no medical basis for prohibiting his transfer. (Doc. # 56 at 2.) Defendants concede that Plaintiff has a medical restriction, but assert that it extends to either NNCC or WSCC, and as a result Plaintiff is only being considered for transfer to WSCC. (*Id*.) They contend that all necessary accommodations are available at Warm Springs Correctional Center (WSCC). (*Id*.) Defendants argue that Plaintiff has not demonstrated a likelihood of success on the merits or irreparable harm; rather, Plaintiff has been receiving continuing medical care for his dental condition. (*Id*. at 4-6.) In addition, they assert Plaintiff has no right to be placed at a particular institution. (*Id*. at 5.)

**D. Hearing**

The court conducted a hearing on October 22, 2013, which was attended telephonically by NNCC physician, Dr. Karen Gedney. (*See* Minutes at Doc. # 61.) At the hearing, it was revealed that NNCC and WSCC are actually only three miles apart, and that the specialist that Plaintiff has been seeing and will continue to receive treatment from is located in nearby both locations, in Carson City, Nevada. Defendants also confirmed at the hearing that NNCC no

longer has a full time dentist on staff, but WSCC does. In addition, WSCC has a full time doctor on staff, and if an issue were to arise that could not be handled by WSCC medical staff, Plaintiff would be transported to NCCC, three miles away.

## II. LEGAL STANDARD

The purpose of a preliminary injunction or temporary restraining order is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined. *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). A preliminary injunction is an "extraordinary and drastic remedy" that is "never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citations omitted). Instead, in every case, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 23 (2008) (internal quotation marks and citation omitted). The instant motion requires that the court determine whether Plaintiff has established the following: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Id.* at 20 (citations omitted).

Before *Winter*, courts in the Ninth Circuit applied an alternative "sliding-scale" test for issuing a preliminary injunction that allowed the movant to offset the weakness of a showing on one factor with the strength of another. *See Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). In *Winter*, the Supreme Court did not directly address the continued validity of the Ninth Circuit's sliding-scale approach to preliminary injunctions. *See Winter*, 555 U.S. at 51 (Ginsburg, J., dissenting: "[C]ourts have evaluated claims for equitable relief on a

'sliding scale,' sometimes awarding relief based on a lower likelihood of harm when the likelihood of success is very high...This Court has never rejected that formulation, and I do not believe it does so today."); *see also Alliance*, 632 F.3d at 1131. Instead, the portion of the sliding-scale test that allowed injunctive relief upon the possibility, as opposed to likelihood, of irreparable injury to the plaintiff, was expressly overruled by *Winter*. *See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009). The Ninth Circuit has since found that post-*Winter*, this circuit's sliding-scale approach, or "serious questions" test "survives...when applied as part of the four-element *Winter* test." *Alliance*, 632 F.3d at 1131-32. "In other words, 'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Id*.

An even more stringent standard is applied where mandatory, as opposed to prohibitory preliminary relief is sought. The Ninth Circuit has noted that although the same general principles inform the court's analysis, "[w]here a party seeks mandatory preliminary relief that goes well beyond maintaining the status quo pendente lite, courts should be extremely cautious about issuing a preliminary injunction." *Martin v. International Olympic Committee*, 740 F.2d 670, 675 (9th Cir. 1984) (citation omitted). Thus, an award of mandatory preliminary relief is not to be granted unless both the facts and the law clearly favor the moving party and extreme or very serious damage will result. *See Anderson v. United States*, 612 F.2d 1112, 1115 (9th Cir. 1979) (citations omitted). "[I]n doubtful cases" a mandatory injunction will not issue. *Id*.

Finally, the Prison Litigation Reform Act (PLRA) mandates that prisoner litigants must satisfy additional requirements when seeking preliminary injunctive relief against prison officials. The PLRA provides, in relevant part:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2). Thus, § 3626(a)(2) limits the court's power to grant preliminary injunctive relief to inmates. *See Gilmore v. People of the State of California*, 220 F.3d 987, 998 (9th Cir. 2000). "Section 3626(a)...operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators-no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Id.* at 999.

The standard for issuing a temporary restraining order is identical to the standard for preliminary injunction. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co.*, *Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Moreover, it is appropriate to treat a non-ex parte motion for a temporary restraining order and preliminary injunction as a motion for a preliminary injunction. *See* 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2951 (2d ed. 2007) ("When the opposing party actually receives notice of the application for a restraining order, the procedure that is followed does not differ functionally from that on an application for a preliminary injunction and the proceeding is not subject to any special requirements.").

### III. DISCUSSION

Preliminarily, the court points out that an inmate generally has no right to be placed in a particular facility within the State's prison system. Nor is the court permitted to second-guess the prison's decisions regarding a prisoner's classification to a particular facility. *See Meachum v. Fano*, 427 U.S. 215, 223-24 (1976) ("The Constitution does not require that the State have more

7

than one prison for convicted felons; nor does it guarantee that the convicted prisoner will be placed in any particular prison, if, as is likely, the State has more than one correctional institution. The initial decision to assign the convict to a particular institution is not subject to audit under the Due Process Clause, although the degree of confinement in one prison may be quite different from that in another.").

Next, to the extent Plaintiff asserts that the transfer to WSCC should be prohibited because it will violate the Eighth Amendment, the court finds Plaintiff has not established he is entitled to injunctive relief.

Defendants concede Plaintiff has a medical restriction; however, that restriction permits him to remain at *either* NNCC or WSCC, so that he can continue to receive treatment for his jaw. (*See* Doc. # 56-1 at 12 indicating Plaintiff may be housed at NNCC or WSCC.) They contend a transfer to WSCC is necessary because of a lack of bed space at NNCC. WSCC is located less than three miles from NNCC. The specialist Plaintiff is seeing for his jaw, Dr. Pincock, is located in Carson City, Nevada, which is in close proximity to both NNCC and WSCC. Plaintiff can receive pain medication for his condition at WSCC, and WSCC has medical staff, as well as a dentist, on site to handle any issues that may arise on their watch with respect to Plaintiff's jaw condition. Should an issue occur after hours, Dr. Gedney assured the court that Plaintiff would be transported to NNCC for treatment.

Under these circumstances, the court cannot conclude that Plaintiff is likely to suffer irreparable injury in the absence of an injunction prohibiting his transfer. Nor can the court say that an injunction is in the public interest or that the balance of equities weighs in Plaintiff's favor. Instead, it appears that Plaintiff has equal access to treatment whether he is housed at NNCC or WSCC, whether he seeks treatment by NDOC staff or the dental specialist located in

Carson City. While Plaintiff presents a colorable argument that he is likely to succeed on the merits of his claim regarding the delay in receipt of treatment for his jaw, Defendants likewise argue that Plaintiff has received adequate medical care for his condition. The court cannot conclude at this juncture whether Plaintiff is indeed likely to succeed on the merits; however, the remaining factors weigh against issuing an injunction prohibiting his transfer to WSCC. Accordingly, the court recommends that Plaintiff's request for a temporary restraining order and preliminary injunction (Docs. # 52, # 53) be denied.

### IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order **DENYING** Plaintiff's request for a temporary restraining order and preliminary injunction (Doc. # 52, # 53).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of the District Court's judgment.

DATED: October 30, 2013.

_____
**WILLIAM G. COBB**
**UNITED STATES MAGISTRATE JUDGE**